IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EMI C. LONG, aka EMI C. FARLEY and
KIRK P. FARLEY, husband and wife,

                        Plaintiffs,

        v.

PACIFIC WOMEN'S CENTER, LLC, an
Oregon Corporation, et al.,

                        Defendants.

_____

Case No. 6:19-cv-1942-MC

OPINION AND ORDER

MCSHANE, Judge:

      Plaintiffs bring this medical negligence and product liability action against several health care providers and a drug manufacturer. Defendants John Ngo, D.O. and Arin Braseth, M.D. (collectively, the Washington defendants) move to dismiss for lack of personal jurisdiction or, in the alternative, transfer.[1] ECF No 50. Defendants Bayer Healthcare Pharmaceuticals, Inc., Bayer Healthcare, LLC, and Bayer Medical Care, Inc. (collectively, "Bayer") move to dismiss for failure to state a claim. ECF No. 48.

_____

[1] Defendants Corey Sullivan, M.D. and the Providence Defendants joint this motion. ECF No. 51.

1 – OPINION AND ORDER

## BACKGROUND[2]

Bayer manufactured and distributed the oral contraceptive Beyaz. Bayer knew, or should have known, that Beyaz "was associated with significantly higher risk of stroke," and the risk increased with the patient's age. Bayer knew, or should have known, that Beyaz had not been adequately tested for women over the age of 36 and that it lacked adequate warnings.

Defendants Richard Beyerlein, M.D, a gynecologist, Pacific Women's Center, LLC, Corey Sullivan, M.D. and the Providence defendants prescribed Beyaz to Plaintiff Emi Long.[3] These Defendants "knew or should have known that Plaintiff Emi Long suffered from migraines, which further increased her risk of stroke from Beyaz." Compl. ¶ 25.

On May 20, 2017, "Emi Long sought care from Defendants Providence and Ngo for a migraine headache with transient neurologic deficits. Defendants did not evaluate Plaintiff for stroke, nor did they advise her to stop taking Beyaz because of increased risk of stroke." Compl. ¶ 26. On November 29, 2017, "Ms. Long developed stroke symptoms and promptly sought care from defendants Providence and Braseth. They delayed in obtaining diagnostic imaging of her brain and failed to undertake timely medical intervention." Compl. ¶ 27. "As a result, Ms. Long suffered a major stroke related to Beyaz that damaged her brain and neurologic system." Compl. ¶ 28.

Plaintiffs bring strict product liability claims against "Bayer based on a design defect, inadequate testing, and/or failure to adequately warn regarding Beyaz." Compl. ¶ 32. "Beyaz was unreasonably dangerous in its design, with the risks outweighing the benefits for its use, and in

---

[2] At the motion to dismiss stage, I assume the truth Plaintiffs' allegations.
[3] After the parties briefed the pending motions, Dr. Beyerlein and the Pacific Women's Center filed a stipulated notice of dismissal as to the claims against them. ECF No. 80.

its failure to perform as safely as an ordinary consumer would expect when taken daily as directed." Compl. ¶ 33. "Defendant Bayer had a duty to make timely and adequate warnings to physicians and other prescribing healthcare providers of the risks associated with its product Beyaz in women over the age of 36 years and/or who have migraine headaches. . . . Defendant Bayer failed to provide timely and adequate warnings." Compl. ¶ 35.

Plaintiffs also bring negligence claims against the Defendants.

"Defendants Pacific Women's Center, LLC, and Richard Beyerlein, MD were negligent in treating Plaintiff Emi Long with Beyaz when they knew or should have known that she was at significant risk of stroke that made Beyaz an unreasonable choice for a combination oral contraceptive with which to treat her. They were also negligent in failing to warn her that the risk of stroke from Beyaz increased as she aged." Compl. ¶ 39. As noted, these claims were dismissed with prejudice based on the parties' stipulation.

Bayer was negligent in: failing to properly test Beyaz; designing Beyaz such that it would be unreasonably dangerous for women over 40 years old; marketing Beyaz when it knew or should have known it was unreasonably dangerous for women over 40 years old and women with migraines; and failing to warn the public and prescribing healthcare providers that Bayez placed older women and women with migraines at significantly increased risk of stroke. Compl. ¶ 40.

Defendants Providence and Ngo were negligent in: failing to evaluate and treat Ms. Long for a stroke associated with Beyaz; failing to advise Ms. Long that her symptoms were due to Beyaz; failing to advise Ms. Long to stop taking Beyaz due to increased risk of stroke; and failing to warn Ms. Long that she was at substantially increased risk of stroke from Beyaz due to her age and migraines. Compl. ¶ 41.

3 – OPINION AND ORDER

Defendants Providence and Sullivan were negligent in: recommending and prescribing Beyaz to Ms. Long though there were safer alternatives; continuing to treat Ms. Long with Beyaz despite her age and history of migraines; and in failing to warn Ms. Long of the significant risk of stroke she faced in taking Beyaz. Compl. ¶ 42.

Defendants Providence and Braseth were negligent, beginning on November 29, 2017, in failing to: promptly obtain brain imaging; obtain an accurate history; perform a thorough neurologic examination; give a thrombolytic or other vascular intervention; re-examine Ms. Long when she exhibited new neurologic symptoms within the time-frame for thrombolytic therapy; and have the neurology consultant examine Ms. Long within the proper time frame. Compl. ¶ 43.

As noted, Bayer moves to dismiss for failure to state a claim. The Washington doctors move to dismiss for lack of personal jurisdiction or, in the alternative transfer to the Western Division of Washington. The Providence Defendants and Dr. Sullivan join in the Washington doctors' motion to transfer to the Western District of Washington, Tacoma. At oral argument, Plaintiffs conceded that given the dismissal of the claims against Dr. Beyerlein and Pacific Women's Center, venue for the remaining claims (other than those against Bayer) was appropriate in the Western Division of Washington.

1.  **Bayer's Motion to Dismiss**

### STANDARDS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter that "state[s] a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the factual allegations allow the court to infer the defendant's liability based on the alleged conduct.

4 – OPINION AND ORDER

*Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). The factual allegations must present more than "the mere possibility of misconduct." *Id.* at 678.

While considering a motion to dismiss, the court must accept all allegations of material fact as true and construe those facts in the light most favorable to the non-movant. *Burget v. Lokelani Bernice Pauahi Bishop Trust*, 200 F.3d 661, 663 (9th Cir. 2000). But the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555. If the complaint is dismissed, leave to amend should be granted unless "the pleading could not possibly be cured by the allegation of other facts." *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

## DISCUSSION

Bayer argues the warning label on the oral contraceptive requires the Court to conclude Plaintiffs claims against it fail as a matter of law. Plaintiffs first argue that because the complaint makes no mention of the warning label, the Court may not consider it at the motion to dismiss stage. "On a motion to dismiss, we may consider materials incorporated into the complaint or matters of public record." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). Courts may review such "documents in situations where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to the document's relevance." *Id.* The adequacy of the warnings lay at the heart of Plaintiff's claims against Bayer. There is no dispute as the authenticity of the warnings. Therefore, the Court may consider the warnings at the motion to dismiss stage.

Under Oregon law, the manufacturer of prescription drugs has a "duty of making timely and adequate warnings" regarding dangers inherent to the use of the drug. *McEwen v. Ortho*

5 – OPINION AND ORDER

*Pharm. Corp.*, 528 P.2d 522, 528 (Or. 1974). In other words, "the drug manufacturer must utilize methods of warning which will be reasonably effective to bring the warning home to prescribing and treating physicians." *Allen v. G.D. Searle & Co.*, 708 F. Supp. 1142 (D. Or. 1989) (citing *McEwan*, 528 P.2d at 529). A court can determine whether such a warning is adequate as a matter of law "by superimposing the warnings actually given over the dangers which were foreseeable by [the drug manufacturers]." *McEwan*, 528 P.2d at 533. A warning is not adequate if it is misleading or ambiguous, includes important omissions, fails to reveal the full extent of the dangers, or fails to notify that use of the drug should be permanently discontinued prior to the patient suffering irreversible injury. *Id.* at 402-04; *Allen*, 708 F. Supp. at 1148.

In other jurisdictions,[4] a warning on a prescription drug is adequate as a matter of law if it "is accurate, clear, and unambiguous." *Felix v. Hoffman-La Roche, Inc.*, 540 So. 2d 102, 105 (Fla. 1989). *See Martin v. Hacker*, 628 N.E.2d 1308, 1312 (N.Y. 1993); *Gerber v. Hoffman-La Roche Inc.*, 392 F. Supp. 2d 907, 918 (S.D. Tex. 2005)). The warning should also "portra[y] with sufficient intensity the risk involved in taking the drug." *Martin*, 628 N.E.2d at 1312. Put differently, a warning is adequate as a matter of law if it specifically mentions the plaintiff's circumstances and includes language that reasonably informs an individual of the danger involved. *Gerber*, 392 F. Supp. 2d at 916 (citing *Rolen v. Burroughs Wellcome Co.*, 856 S.W.2d 607 (Tex. App. 1993); *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254 (5th Cir. 2002)).

The warning at issue contains a contraindication.[5] The contraindication states, "Do not prescribe Beyaz to women who are known to have . . . migraine headaches with or without auroa

---

[4] Florida, New York, Texas, and Washington, like Oregon, analyze products liability claims under the Restatement Second of Torts § 402A.

[5] A contraindication describes "those situations in which the drug should not be used because the risk of use clearly outweighs any possible benefit." 21 C.F.R. § 201.57(d).

if over age 35." Erfle Decl. Ex. 1, 2010 Beyaz Label, § 4. This warning label is legally

significant. *Gerber*, 392 F. Supp. 2d at 917-18; *See Martin*, 628 N.E.2d at 1312; *Brumley v.*

*Pfizer, Inc.*, 149 F. Supp. 2d 305, 313 (S.D. Tex. 2001) ("[a] contraindication is more than a

warning"). If a warning includes an explicit contraindication, which "go[es] beyond

communicating that the risks clearly outweigh any possible benefit" to instruct medical

professionals that the plaintiff should not take the prescription drug, the warning is adequate as a

matter of law because it unequivocally warns of the specific risk. *Estate of LaMontagne v.*

*Bristol-Myers Squibb*, 111 P.3d 857,  865 (Wash. Ct. App. 2005). In other words, a

contraindication renders the warning adequate as a matter of law when it is impossible for

reasonable persons to disagree that the warning states the prescription drug is dangerous for the

plaintiff and should never be prescribed to the plaintiff. *Felix*, 540 So. 2d at 105.

 For a warning to be adequate under Oregon law, "the manufacturer must utilize methods

of warning which will be reasonably effective, taking into account both the seriousness of the

drug's adverse effects and the difficulties inherent in bringing such information to the attention

of a group as large and diverse as the medical profession." *McEwen*, 528 P.2d at 528. For a

prescription drug like Beyaz, there is no stronger warning than a contraindication. As noted

above, a contraindication describes "those situations in which the drug should not be used

because the risk of use clearly outweighs any possible benefit." 21 C.F.R. § 201.57(d).

 Ms. Long was 43 years old when she presented to the emergency room in May 2017

complaining of migraines. Compl. ¶ 26. She suffered the stroke in November 2017. Compl. ¶ 28.

Dr. Beyerlein, who first prescribed Beyaz to Plaintiff, "knew or should have known that Plaintiff

Emi Long suffered from migraines, which further increased her risk of stroke from Beyaz."

Compl. ¶ 25. Because "[t]he warning specifically and unambiguously mentions the

7 – OPINION AND ORDER

circumstances of which [the plaintiffs] complain[]," Plaintiffs' failure to warn claims fail as a matter of law. *Gerber*, 392 F. Supp. 2d at 917.

Because Bayer expressly warned doctors never to prescribe Beyez to anyone over 36 years of age who suffered from migraines, Plaintiffs fail to demonstrate that any stronger warning would have resulted in doctors not prescribing Beyez to Ms. Long, who was over 36 years old and suffered from migraines. In other words, Plaintiff cannot demonstrate any inadequate warning from Bayer caused her stroke. Plaintiffs' design defect claim, however, requires Plaintiffs to establish the drug was accompanied by inadequate warnings. *See* RESTATEMENT (SECOND) OF TORTS § 402a, CMT.K (Am. Law Ins. 1965) (noting design defect claim for prescription drug fails if drug is "accompanied by proper directions and warning"); Or. Rev. Stat. § 30.920(3). Similarly, Plaintiffs' inadequate testing claim fails because Plaintiff cannot establish her injuries arose from inadequate testing on Bayer's part. Or. Rev. Stat. § 30.900(1). No matter how inadequate Bayer's testing, it specifically warned doctors that the risk of harm to women with Ms. Long's characteristics outweighed any potential medical benefit Ms. Long could receive from Beyaz.

Because Bayer could not have provided a stronger warning regarding the appropriate use of Beyaz to women with Ms. Long's specific characteristics, leave to amend would be futile.

2. **Motion to Dismiss or Transfer**

### STANDARD OF REVIEW

"Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). "Although the plaintiff cannot 'simply rest on the bare allegations of its complaint,' *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*,

8 – OPINION AND ORDER

551 F.2d 784, 787 (9th Cir. 1977), uncontroverted allegations in the complaint must be taken as true." *Id.*

## DISCUSSION

The Washington doctors argue this Court lacks personal jurisdiction over them and that venue is appropriate in Tacoma, where the allegedly negligent actions took place. The Court agrees.

Where, as here, there is no applicable federal statute governing personal jurisdiction, a district court must apply the law of the state in which it sits. *See* Fed. R. Civ. P. 4(k)(1)(A); *Panvasion Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). Oregon law authorizes personal jurisdiction to the full extent permitted by the Due Process Clause of the U.S. Constitution.  *See* Or. R. Civ. P. 4L. To comport with the requirements of due process, a court may only exercise personal jurisdiction over a non-resident defendant if that defendant has sufficient "minimum contacts" with the forum state, such that the exercise of personal jurisdiction would not "offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citations and quotation marks omitted). A defendant's minimum contacts may be established through a showing of either general or specific jurisdiction. *Schwarzenegger*, 374 F.3d at 801.

Plaintiffs argue the Court has specific personal jurisdiction over Doctor Ngo and Doctor Braseth; *i.e.,* the doctors who treated Ms. Long in the hospital in Tacoma, Washington. In the Ninth Circuit, courts apply a three-part test to determine whether the exercise of specific jurisdiction over a non-resident defendant is appropriate:

> (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting

9 – OPINION AND ORDER

activities in the forum, thereby invoking the benefits and protections of its laws;
(2) the claim must be one which arises out of or relates to the defendant's forum-
related activities; and (3) the exercise of jurisdiction must comport with fair play
and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citation and quotation marks omitted). A plaintiff bears the

burden of establishing the first two elements of the test, after which the burden shifts to the

defendant to "present a compelling case" that the exercise of jurisdiction would not be

reasonable. *Burger King Corp. v. Rudzewic*, 471 U.S. 462, 477 (1985). "[I]f the plaintiff fails at

the first step," however, "the jurisdictional inquiry ends." *Boschetto*, 539 F.3d at 1016.

Plaintiffs fail to meet their burden to demonstrate the doctors purposefully directed any

activity towards Oregon. Doctor Ngo and Doctor Braseth are licensed in the State of Washington

and practice emergency medicine at Providence. Compl. ¶¶ 15-16. Neither doctor is licensed to

practice medicine in Oregon, and during the relevant time period, the doctors did not "offer,

advertise, or solicit [their] services to the residents of Oregon or to the state of Oregon in any

form or manner." Braseth Decl. ¶¶ 4-6; Ngo Decl. ¶¶ 4-6. Both doctors are residents and citizens

of the State of Washington. Braseth Decl. ¶ 3; Ndo Decl. ¶ 3. The Providence hospital is a

Washington Corporation with its principle place of business in Washington. Compl. ¶ 10. All of

the relevant care provided by the Washington doctors was provided at the Providence hospital in

Olympia, Washington. Burtner Decl. ¶ 7.

A defendant purposefully directs her conduct towards the forum state when the

defendant: "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing

harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger*, 374

F.3d at 803 (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002). The lone

arguments Plaintiffs make in arguing the Washington doctors purposefully directed their

activities to Oregon are: (1) the emergency room where the doctors work provides care to people from Oregon who present for treatment; and (2) Ms. Long's electronic medical records, which were available to the doctors, listed her Oregon telephone number. ECF No. 64, 6-7.

As noted by the Washington doctors, federal regulations require emergency rooms to treat whoever walks through the door and requests medical assistance. Reply, 5 (citing the Emergency Medical Treatment and Active Labor Act of 1986, 42 U.S.C. § 1395dd). In treating Ms. Long—who lived in Washington during the time period at issue—at a hospital in Tacoma, Washington, the doctors did not commit any act "expressly aimed at" Oregon. The mere fact that Ms. Long's medical records contained an Oregon-based telephone number does not mean the doctors purposefully directed their actions towards Oregon. *See Walden v. Fiore*, 571 U.S. 277, 285 (2014) (noting "our 'minimum contacts' analysis looks to the defendant's contacts with the forum state itself, not the defendant's contacts with persons who reside there"). Instead, the doctors simply provided care to a woman who, unsolicited, requested treatment and happened, at some prior point, to have resided in Oregon. Even assuming the doctors identified Ms. Long's telephone number as an Oregon-based number, the doctors' "express aim [of providing medical care in a Washington emergency room] was local" and not "expressly aimed" at Oregon. *Schwarzenegger*, 374 F.3d at 807.

The only link between the doctors and the state of Oregon is the fact that Plaintiff at one point resided in Oregon. "But the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum state that is the basis for its jurisdiction over him." *Walden*, 571 U.S. at 285. Plaintiffs have not met their burden to demonstrate any connection between Doctor Ngo or Doctor Braseth and the state of Oregon.

11 – OPINION AND ORDER

If a court lacks personal jurisdiction, "the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed[.]" 28 U.S.C. § 1631. The moving defendants argue the appropriate venue is the Western District of Washington in Tacoma. Reply 10 ("Alternatively, the court may bifurcate the Washington claims from the Oregon claims and transfer the Washington claims to the Western District of Washington in Tacoma.") As all of the relevant actions and inactions by the moving Defendants took place in the Providence Hospital in Tacoma, Washington, Plaintiffs could have filed their claims against the Washington Defendants in the Western District of Washington.

Although Doctors Braseth and Ngo argue dismissal, rather than transfer, is appropriate, the Court disagrees. The Providence Defendants and Doctor Sullivan do not dispute the Court has personal jurisdiction over them. Therefore, this Court will necessarily have to transfer at least those claims to the Western Division of Washington. Because no judicial efficiency concerns justify dismissal of the claims against Doctors Braseth and Ngo, and because those defendants will not be harmed by the transfer of those claims, the Court concludes the interests of justice require all remaining claims be transferred to Washington.

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

/ / / /

12 – OPINION AND ORDER

/ / / /

## CONCLUSION

Bayer's Motion to Dismiss, ECF No. 48, is GRANTED and Plaintiffs claims against the Bayer defendants are DISMISSED, with prejudice. The Court GRANTS the Motion to Dismiss, or in the Alternative, to Transfer, ECF No. 50. Plaintiffs' claims against Doctor Ngo, Doctor Braseth, Doctor Sullivan, and the Providence Defendants are transferred to the Western District of Washington in Tacoma.

IT IS SO ORDERED.

DATED this 24th day of June, 2020.

_____/s/ Michael McShane_____
Michael McShane
United States District Judge

13 – OPINION AND ORDER